**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ERICA MORANO-PHILLIP,

        Plaintiff,

v.                                                                          Case No:   6:20-cv-1892-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

**MEMORANDUM OF DECISION[1]**

Erica Morano-Phillip ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income Benefits ("SSI").  (Doc. 1).  Claimant raises two arguments challenging the Commissioner's final decision, and based on those arguments, requests that the matter be remanded.  (Doc. 40, at 20, 31, 37).  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.  (*Id.*, at 37).  For the reasons stated herein, the Commissioner's final decision is **REVERSED** and

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  *See* Docs. 24, 28-29.

**REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY.

On March 16, 2017, Claimant filed an application for SSI, alleging a disability onset date of January 1, 2010.  (R. 27).[2]  Claimant's application was denied initially and on reconsideration, and she requested a hearing before an ALJ.  (R. 106-08, 112-17, 119-21).  A hearing was held before the ALJ on October 10, 2019, at which Claimant was represented by an attorney.  (R. 41-72).  Claimant and a vocational expert ("VE") testified at the hearing.  (*Id.*).

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  (R. 24-39).  Claimant sought review of the ALJ's decision by the Appeals Council.  (R. 209-10).  On August 20, 2020, the Appeals Council denied the request for review.  (R. 1-6).  Claimant now seeks review of the final decision of the Commissioner by this Court.  (Doc. 1).

---

[2] The record cited by the parties in the Joint Memorandum appears to show that Claimant filed her application for SSI on April 21, 2017, *see* R. 213, but both the parties and the ALJ state that Claimant filed her application on March 16, 2017.  (Doc. 40, at 21, n.8; R. 27).  The Court notes this discrepancy given the new regulations implemented by the SSA related to the evaluation of medical opinions, which govern applications filed on or after March 27, 2017.  *See* 20 C.F.R. § 416.920c.  However, the Court does not find that the new regulations impact the analysis of this Memorandum of Decision, as the issues discussed herein do not concern the evaluation of medical opinions.

## II. THE ALJ'S DECISION.

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a). (R. 28-35).[3] The ALJ concluded that Claimant had not engaged in substantial gainful activity since March 16, 2017, the SSI application date. (R. 29). The ALJ found that Claimant had the following severe impairments: depressive disorder, anxiety disorder, bipolar disorder, posttraumatic stress disorder, and obesity. (*Id.*). The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

After consideration of the entire record, the ALJ next found that Claimant had the residual functional capacity ("RFC") to perform medium work as defined in the Social Security regulations,[4] except:

---

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

[4] The social security regulations define medium work to include "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

> simple and routine meaning with an SVP of 1 or 2, never climb ladders, ropes or scaffolds, avoid exposure to hazards such as heights, frequent handling and fingering with the upper extremities, no production rate pace work, occasional changes in a routine workplace setting, occasional contact with coworkers, supervisors and the general public. The claimant would likely be off task 10% of the workday.

(R. 31).

After considering the record evidence, the ALJ found that Claimant was unable to perform past relevant work as a newspaper carrier. (R. 34). However, the ALJ found, upon consideration of the claimant's age, education, work experience, and RFC, as well the testimony of the VE, that Claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 34-35). Specifically, the ALJ found that Claimant could perform the requirements of representative occupations such as hand packager, laboratory equipment cleaner, and counter supply worker. (R. 35). Accordingly, the ALJ concluded that Claimant was not under a disability, as defined by the Social Security Act, from March 16, 2017, the date her SSI application was filed, through the date of decision. (*Id.*).

### III. STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct

legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even "within this narrowly circumscribed role, [reviewing courts] do not act as automatons. We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (internal citations omitted).

**IV.   ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error: (1) the ALJ's RFC determination and hypothetical

questions to the VE were unsupported by substantial evidence, and (2) the ALJ failed to properly consider Claimant's subjective allegations and complaints. (Doc. 40, at 20, 31). The Court will limit its discussion to Claimant's first assignment of error, as it is dispositive of this appeal.

An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). At the fourth step of the sequential evaluation process, the ALJ must determine Claimant's RFC. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case." *Id.* (citations and quotations omitted). In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. § 416.945(a)(3).

Claimant contends that the ALJ's RFC is unsupported by substantial evidence "primarily because the ALJ failed to consider the majority of the probative medical evidence in [Claimant's] case." (Doc. 40, at 20). Claimant makes three separate arguments on this point: (1) the ALJ failed to consider the evaluations of examining physicians Dr. Laura Mendoza and Dr. Jose Alvarez, (2) the ALJ failed

to consider the evaluation of examining physician Dr. Jessica Karle, which Claimant asserts bolsters the records of Claimant's treating psychiatric provider, Mary Ann Barnett, ARNP, and (3) the ALJ impermissibly cherry-picked the records of ARNP Barnett, focusing on those aspects of the records that supported his conclusion while ignoring evidence in support of Claimant's position. (*Id.*, at 20-25). Claimant further contends that based on these alleged errors, the ALJ's reliance on the VE testimony in fashioning Claimant's RFC was error. (*Id.*, at 25-26).

With regard to the records of Dr. Mendoza and Dr. Alvarez, Claimant argues that these records directly contradict the ALJ's statements in his decision that there was "no evidence" that Claimant could not interact with medical personnel, and that these misstatements of the record constitute reversible error. (*Id.*, at 20). During the step 3 analysis (whether any impairment or combination of impairments meets or medically exceeds a listed impairment), the ALJ stated as follows (in relevant part):

> In interacting with others, the claimant has a moderate limitation. The claimant testified she did not like to be around people or travel outside her home. She has been fired from her last 2 jobs because of anger outburst. Mental status examinations reveal she had an anxious affect. *However, there is no evidence she could not interact with medical person[nel].*
>
> …
>
> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant can independently perform self-car[e] activities including bathing, grooming and dressing. While she

> testified she had difficulty regulating her emotions, *there is no evidence she experienced anger outburst with medical person[nel].*

(R. 30) (emphasis supplied).[5]  During step 4 (the RFC analysis), the ALJ further stated that:

> The claimant testified she was fired from her last two jobs because she could not control her anger (Exhibit 5F and 6F).  She worked at a restaurant drive through window.  She threw French fries at an ang[ry] customer and she was fired.  She was also fired from her recycling job because of she had problems with her supervisor.  While the claimant experienced problems interacting in these jobs, she has demonstrated an ability to interact in other situations.  She testified she could get along with her family *and there is no evidence she had difficulty interacting with medical person[nel].*  At the hearing, she responded appropriately to questioning. However, given her testimony, the residual functional capacity in this decision limits her interaction with supervisors, coworkers and the public to occasional to reduce the potential for anger outburst.  Additionally, her jobs are limited to simple and routine with an SVP of 1 or 2 to reduce stress as a trigger for anger outburst.

(R. 32) (emphasis supplied).

During a January 30, 2015 evaluation of Claimant, who presented to a medical clinic for "irritability," Dr. Alvarez noted that Claimant was "very angry, irritable, and abusive to the practitioner verbally," and was "uncooperative, condescending,

---

[5] The Court notes that the Psychiatric Review Technique Form ("PRTF") analysis is distinct from the RFC analysis.   However, "the Eleventh Circuit has held that the limitations identified in a claimant's PRTF should be considered in determining the claimant's RFC."   *Ramos v. Astrue*, No. 8:11-cv-1942-T-MCR, 2012 WL 3670397, at *7 (M.D. Fla. Aug. 27, 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871 (11th Cir. 2011)).

and disrespectful" to him. (R. 334-35). Dr. Alvarez further observed that in response to his suggestion to Claimant that she needed counseling and might benefit from a mood stabilizer, Claimant "began to argue with [Dr. Alvarez]. Her voice became loud and increasingly angry." (*Id.*). Notes from Dr. Alvarez's mental status evaluation of Claimant state that Claimant "entered the clinic with a chip on her shoulder and irritability" and was "quite verbally abusive towards staff and the practitioner throughout the entire interview." (*Id.*). Dr. Alvarez noted that Claimant "seemed offended by questions regarding her history" and was "condescending and disrespectful" to him. (R. 336). In addition, during a January 6, 2015 acute visit with Dr. Mendoza, during which Claimant requested refills of her psychiatric medications, Dr. Mendoza noted that Claimant was "swearing and demanding," and "anxious, hyperactive, and agitated." (R. 344, 346).

The ALJ never mentioned, let alone discussed, the records of Dr. Alvarez or Dr. Mendoza in his decision. *See* R. 27-35. According to Claimant, the ALJ's failure to consider these records was error, for which reversal and remand of the ALJ's decision is warranted. (Doc. 40, at 20, 24). The Court agrees. To begin, it cannot be disputed that the ALJ misstated the medical evidence of record. As explained above, the ALJ affirmatively stated that the record contained *no* evidence that Claimant "could not interact with," "had difficulty interacting with," or

"experienced anger outburst with," medical personnel. (R. 30, 32). However, the records of Dr. Mendoza and Dr. Alvarez clearly demonstrate that Claimant has experienced difficulty in interacting with her medical providers, and specifically, has exhibited anger in those interactions. (R. 334-35, 344, 346).

The Eleventh Circuit has held that an ALJ's misstatement of fact is harmless error if it does not affect the ALJ's conclusion. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Further, a single erroneous statement by the ALJ does not always necessitate remand. *See Washington v. Astrue*, 2009 WL 2949034, at *14 (M.D. Fla. Sept 14, 2009) (citing *Rhodes v. Astrue*, No. 8:07-cv-18-T-MAP, 2008 WL 360823, at *3 (M.D. Fla. Feb. 8, 2008) (finding that single misstatement by ALJ, standing alone, was not grounds for reversal where the ALJ's finding was otherwise supported by substantial evidence)). However, "[c]ourts in this district have found that if the ALJ makes a misstatement of fact that is material or integral to the ALJ's ultimate decision, then the misstatement is not harmless and remand may be warranted." *Baxter v. Comm'r of Soc. Sec.*, No. 6:18-cv-1118-Orl-DCI, 2019 WL 4140939, at *2 (M.D. Fla. Aug. 30, 2019) (citing cases). Where the misstatement substantially affects the ALJ's ultimate conclusion, the misstatement is material. *See, e.g., Dolan v. Comm'r of Soc. Sec.*, No. 6:16-cv-2143-Orl-41GJK, 2017 WL 8809481, at *3 (M.D. Fla. Oct. 23, 2017) (where ALJ relied on misstatement to find claimant's statements regarding effects of his impairments not credible, ALJ's misstatements substantially

affected his decision and were therefore material, and not harmless error), *report and recommendation adopted*, 2018 WL 1531917 (M.D. Fla. Mar. 29, 2018).

The Court cannot say that the ALJ's misstatement of the medical evidence of record is harmless, as it is clear that the ALJ relied upon his misstatement to determine the limitations set forth in the RFC.  (R. 32).[6]  *See Mills v. Colvin*, No. CV413–044, 2014 WL 2212211, at *6-7 (S.D. Ga. May 28, 2014) ("When [misstatements by the ALJ] are material to the determination of the degree of impairment, a reviewing court cannot say that the ALJ conducted a careful and thorough review of the record or that his decision is based on substantial evidence.").  While the ALJ noted Claimant's subjective testimony regarding her anger and accounted for the same in the RFC determination, *see* R. 32, because the ALJ not only discounted *all* of the medical records that demonstrated Claimant's difficulties in interacting with medical personnel, but also included in his discussion of the RFC his misstatements of the medical evidence of record, the Court cannot say that the ALJ would have reached the same conclusion had he considered the

---

[6] The Court notes that the Commissioner offers no argument to suggest that the ALJ's statements were in fact correct, or that the ALJ's misstatements were not material.  *See* Doc. 40, at 26-31.  Rather, the Commissioner's only argument with respect to the ALJ's failure to cite to the records of Dr. Alvarez and Dr. Mendoza is that the ALJ is not required to cite every record in his decision.  *See id*.  However, as explained herein, the ALJ's failure to cite these records, combined with the ALJ's misstatement to the contrary that such records do not exist, in light of the facts of this case, constitutes reversible error.

records from Drs. Alvarez and Mendoza.  *See, e.g., Perez v. Colvin*, No. 8:14-cv-2264-T-MCR, 2016 WL 490385, at *3 (M.D. Fla. Feb. 9, 2016) ("Because there is no indication that the ALJ considered these records [in support of the claimant's position], which seem to suggest greater limitations than assessed by the ALJ, the Court cannot conclude that the ALJ's decision is supported by substantial evidence."); *Neal v. Comm'r of Soc. Sec.*, No. 6:18-cv-937-Orl-DCI, 2019 WL 4394091, at *3 (M.D. Fla. Sept. 13, 2019) ("Since the ALJ's ultimate conclusion about Claimant's lifting limitations, as stated in the RFC, is based on mischaracterized medical opinion, the error is material and necessitates reversal.").  Nor can the Court assume that the ALJ would have nonetheless reached the same conclusion had he considered these records, as the Court may not "reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]…" *Bloodsworth*, 703 F.2d at 1239.

In sum, because the ALJ failed to consider the records of Dr. Mendoza and Dr. Alvarez, and because it appears that this failure impacted the ALJ's RFC determination, the Court finds that the ALJ's decision is not supported by substantial evidence, and will remand this case for further administrative proceedings.  Given that reversal is necessary on the bases discussed herein, the Court declines to address Claimant's remaining arguments.  *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other

issues when case must be reversed due to other dispositive errors). On remand, the ALJ must address the remaining issues raised by Claimant, including whether: the ALJ properly considered the records of Dr. Karle, the ALJ impermissibly cherry-picked the treatment notes of ARNP Barnett, the ALJ's reliance on the VE testimony in fashioning Claimant's RFC was error, and the ALJ properly considered Claimant's subjective complaints. *See Diorio*, 721 F.2d at 729 (on remand the ALJ must reassess the entire record).

**V. CONCLUSION.**

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 23, 2022.

*Leslie Hoffman Price*
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record